```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X
JOHN WILEY & SONS, INC. and WILEY      04 Civ. 3359 (MGC)
SUBSCRIPTION SERVICES, INC.,
                                              OPINION
             Plaintiffs,

    - against -

PALISADE CORPORATION and
SAMUEL McLAFFERTY,

             Defendants.
--------------------------------X
```

Appearances:

    COWAN, LIEBOWITZ & LATMAN, P.C.
    Attorneys for Plaintiffs
    1133 Avenue of the Americas
    New York, NY 10036

    By:  Richard Dannay, Esq.
        Jason D. Sanders, Esq.


    DORSEY & WHITNEY LLP
    Attorneys for Defendants
    250 Park Avenue
    New York, NY 10177

    By:  Bruce R. Ewing, Esq.
        Aimee Allen, Esq.

**Cedarbaum, J.**

John Wiley & Sons, Inc. and Wiley Subscription Services, Inc. (collectively, "Wiley") sue Palisade Corporation ("Palisade") and its president, Samuel McLafferty, for breach of contract, false designation of origin and false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and deceptive trade practices and false advertising under Sections 349 and 350 of the New York General Business Law. Defendants counterclaim for breach of contract, false advertising under the Lanham Act, and unfair competition under New York common law.

Both sides move for summary judgment. For the reasons that follow, Wiley's motion is denied and Palisade's motion is granted in part and denied in part.

BACKGROUND

The following facts are undisputed, except where specifically noted. Wiley is the owner and publisher of the Wiley Registry, a mass spectral database that is used in the pharmaceutical and environmental industries to identify chemical substances. The data in the Wiley Registry was gathered under the supervision of Dr. Fred McLafferty, Professor Emeritus of Chemistry at Cornell University and the father of defendant Samuel McLafferty. Dr. McLafferty has collaborated with Wiley since the first edition of the Wiley Registry was published in

2

the 1960s.  The Wiley Registry is currently in its seventh edition.

Since 1988, pursuant to an agreement with Dr. McLafferty, Palisade has had the primary responsibility for designing and assembling the various editions of the Wiley Registry.  In 1989, Palisade entered into an agreement with Wiley to become a nonexclusive distributor of the Wiley Registry and related products, including a combined database of the Wiley Registry and the mass library of spectra of the National Institute of Standards and Technology (the "Wiley/NIST" database).  In early 2004, following the expiration of a prior contract, the parties executed a distribution agreement effective as of January 1, 2004 (the "Agreement"), granting Palisade the nonexclusive right to distribute the Wiley Registry.  Shortly after signing the Agreement, and while continuing to sell the Wiley Registry, the Wiley/NIST database, and other products incorporating the Wiley Registry, Palisade began marketing a new product, the Palisade Complete.  The Palisade Complete is a mass spectral database that combines the Wiley Registry with the NIST library and 150,000 additional proprietary spectra.  The additional spectra were gathered by Dr. McLafferty who decided to sell them to Palisade instead of contracting with Wiley for their inclusion in the Wiley Registry, as he had done in the past.

For each sale of the Palisade Complete, Palisade pays Wiley a royalty, as it does for all products which include the Wiley Registry. However, on March 5, 2004, Wiley wrote to Palisade stating that the Agreement does not allow Palisade to include the Wiley Registry in the Palisade Complete, and requested that Palisade stop selling the new product. Palisade refused, and on March 10, 2004, Wiley gave Palisade written notice that failure to cure the breach within thirty days would result in termination for cause pursuant to paragraph 8.3 of the Agreement. When Palisade did not stop selling the Palisade Complete, Wiley commenced this action. After the complaint was filed, Wiley distributed a press release stating that it had terminated the Agreement with Palisade and was seeking redress in court. Wiley also contacted several of Palisade's customers by telephone and e-mail, and offered to sell them the Wiley Registry. Based on these acts, Palisade asserted counterclaims against Wiley for false advertising and unfair competition at common law. In addition, Palisade asserted a counterclaim for wrongful termination of the Agreement.

Both parties move for summary judgment. Wiley seeks summary judgment on its claims of breach of contract, false designation of origin under the Lanham Act, and on Palisade's counterclaims. Palisade seeks summary judgment on Wiley's claims under the Lanham Act and the New York General Business Law. Palisade also

4

moves for partial summary judgment on Wiley's breach of contract claim insofar as it is based on paragraphs 2.2 and 3.2 of the Agreement.  Palisade contends that these provisions of the Agreement are unambiguous and can be interpreted against Wiley as a matter of law.

## DISCUSSION

A motion for summary judgment should be granted if the court determines, from the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  A genuine issue of material fact exists when the evidence is such that a reasonable finder of fact could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Richardson v. Coughlin, 763 F. Supp. 1228, 1234 (S.D.N.Y. 1991). In deciding whether a genuine issue exists, the court must "examine the evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw reasonable inferences against the moving party."  In re Chateaugay Corp., 10 F.3d 944, 957 (2d Cir. 1993).

Where, as here, there is a dispute over the proper construction of a contract, summary judgment may be granted if the contractual language at issue is unambiguous and conveys a definite meaning. Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992). If, however, contractual language "is susceptible to different reasonable interpretations, and 'where there is relevant extrinsic evidence of the parties' actual intent,' then the contract's meaning becomes an issue of fact precluding summary judgment." Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d 1091, 1094 (2d Cir. 1993) (quoting Seiden, 959 F.2d at 428). Whether contractual language is plain or ambiguous is a question of law for the court. Id. (citing W.W.W. Assocs. v. Giancontieri, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440 (1990)).

Wiley contends that Palisade breached paragraphs 3.3(b) and (c) of the Agreement by combining the Wiley Registry with the NIST database and the additional spectra to create the Palisade Complete. Paragraph 3 of the Agreement provides, in relevant part:

> 3. License
>
> 2.1 Wiley will supply [Palisade] 1 master copy of the Products and, subject to this Agreement, grants [Palisade] and its affiliates the nonexclusive, nontransferable global right:
>
>> (a) to reformat the Products for use with [Palisade's] products;

6

>                         . . . .
>
>      3.3   [Palisade] is not permitted:
>
>            . . . .
>
>            (b)   to make alterations to the Products
>                  other than those necessitated by the
>                  reformatting thereof for use with its
>                  own products;
>
>            (c)   except as explicitly provided under
>                  clauses 3.1 and 3.2, to use or
>                  distribute the Products in whole or in
>                  part in any derived form or to use them
>                  for the purpose of developing other
>                  products by way of reverse engineering,
>                  decompilation, transformation, or like
>                  technique.

Although Wiley invokes paragraphs 3.3(b) and (c), both provisions are expressly subject to Palisade's right under paragraph 3.1(a) to "reformat" the Wiley Registry "for use with [Palisade's] products." Thus, as both sides recognize, whether Palisade has the right to create the Palisade Complete under paragraph 3.1(a) is a threshold question in determining whether Wiley is entitled to summary judgment.

Wiley argues that paragraph 3.1(a) is unambiguous and only grants Palisade the limited right to "reformat" the Wiley Registry, i.e., to make certain limited technical changes to the Registry but not to combine it with or incorporate it into other products. Any other interpretation, Wiley contends, would be inconsistent with paragraph 3.3(c), which proscribes the creation of a "derived form" or the reverse engineering, decompilation, or

7

transformation of the Wiley Registry. Even assuming paragraph 3.1(a) permits Palisade to combine the Wiley Registry with its own products, Wiley adds, the Palisade Complete would not qualify. Neither the additional 150,000 spectra nor the NIST database were, at the time the Palisade Complete was created, "Palisade's products," as the language in paragraph 3.1(a) requires. In any case, Wiley contends, if paragraph 3.1(a) had been intended to permit the creation of the Palisade Complete, it would have provided that Palisade may reformat the Wiley Registry for use "in" (as opposed to "with") Palisade's products.

Palisade responds that paragraph 3.1(a) clearly envisions some product combinations. It is uncontested that Palisade is authorized under the Agreement to combine the Wiley Registry with the NIST library in creating the Wiley/NIST database, as well as to bundle the Wiley Registry with Palisade's BenchTop/PBM software application.[1] According to Palisade, the Agreement is ambiguous on whether the combination of the Wiley Registry, not only with the NIST library but also with Palisade's 150,000 proprietary spectra, is permitted. Palisade also argues that its position is not inconsistent with paragraph 3.3(c). According to

---

[1] Although Wiley contends that it had "specifically authorized" the creation of the Wiley/NIST combined database, it has not identified a separate authorization, and acknowledges in its brief that "Palisade's only basis for distribution of the Wiley Registry," which includes the distribution of the Wiley/NIST database, "is pursuant to the ... Agreement."

8

Palisade, that paragraph only proscribes the extraction of partial segments of the Wiley Registry spectra. It does not prohibit the use of the entire Wiley Registry alongside other spectral libraries, as has been done in the Wiley/NIST database and in the Palisade Complete.

An examination of the Agreement shows that the language in paragraph 3.1(a) -- granting Palisade the right "to reformat the Products for use with [Palisade's] products" -- is susceptible to more than one reasonable interpretation, including the two urged here. A genuine issue of disputed fact exists as to the parties' intent with respect to Palisade's right to include the Wiley Registry in the Palisade Complete.

Wiley's second breach of contract theory is that in marketing, packaging, and distributing the Palisade Complete, Palisade breached paragraphs 2.2 and 3.2 of the Agreement. Those paragraphs provide:

> 2.2 Subject to Wiley's written guidelines provided to [Palisade], [Palisade] may use Wiley's logos, trademarks and tradenames in conjunction with its marketing efforts for the Products. [Palisade] shall not remove, obscure or alter Wiley's or its licensors' logos, trademarks, tradenames, copyright notices or other intellectual property or indications thereof on any material [Palisade] receives pursuant to this Agreement.

3.2 [Palisade] shall retain all copyright notices and other indications of intellectual property rights in the Products in each reformatted example thereof and ensure that such Copyright notices and other indications of intellectual property rights are appropriately displayed when the reformatted Products are used with [Palisade's] products.

According to Wiley, Palisade breached these provisions by not including the Wiley name, as it does in the Wiley/NIST database, in the product title for the Palisade Complete; by not mentioning Wiley's name, logo, and copyright notice on the product's CDs; and by giving Wiley's name almost no prominence on the product's package, in marketing materials, or during the installation of the program.

Palisade responds that the Agreement does not specifically require that Wiley's name be mentioned in a product's title, on the CDs, or otherwise specify the manner in which Wiley's name and copyright notice should be displayed. Palisade also argues that it is undisputed that notice of Wiley's copyright is contained in the end-user agreement for the Palisade Complete, and that the Palisade Complete's packaging and marketing materials disclose the inclusion of the Wiley Registry spectra. The prominence given to Wiley, Palisade adds, is consistent with that given it in the marketing and packaging of previous products, such as Palisade's BenchTop/PBM.

The display of Wiley's name and copyright notice in the Palisade Complete appears consistent with the manner of display in the BenchTop/PBM product. But it is noticeably less prominent than the display of Wiley's name and copyright notice in the Wiley/NIST database, which is more analogous to the Palisade Complete than is the BenchTop/PBM. The evidence proffered by the

11

parties gives rise to a genuine issue as to whether Wiley's name and copyright notice were "appropriately displayed" in connection with the Palisade Complete, as required by paragraph 3.2 of the Agreement.

The parties also seek summary judgment on Wiley's claims of false advertising, false designation of origin, and deceptive trade practices, and on Palisade's claims of false advertising and unfair competition. With the exception of Wiley's claim for false advertising, however, these claims are derivative of Wiley's breach of contract claim. If Palisade did not breach the Agreement, Wiley's claims of false designation of origin and deceptive trade practices fail. Conversely, if Palisade breached the Agreement, Palisade's claims against Wiley for wrongful termination, false advertising, and unfair competition fail. The parties' motions on these claims are premature.

Wiley's false advertising claim under Section 43(a)(1)(B) of the Lanham Act and Section 350 of the General Business Law is that Palisade falsely represented to consumers that the Palisade Complete includes more than 600,000 spectra and contains all commercially available reference spectra. In addition, Wiley alleges that Palisade falsely represented the number of spectra contained in the 2002 version of the Wiley/NIST database.

Section 43(a)(1) of the Lanham Act provides:

> Any person who, on or in connection with any goods
> or services, or any container for goods, uses in
> commerce any word, term, name, symbol, or device,
> or any combination thereof, or any false
> designation of origin, false or misleading
> description of fact, or false or misleading
> representation of fact, which —
>
> (B) in commercial advertising or promotion,
> misrepresents the nature, characteristics,
> qualities, or geographic origin of his or her or
> another person's goods, services, or commercial
> activities, shall be liable in a civil action by
> any person who believes that he or she is or is
> likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B). Section 350 of the General Business Law prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service." Gen. Bus. Law § 350. To prevail on a false advertising claim, a plaintiff must demonstrate that the defendant made a representation, in commercial advertising or promotion, that is either (1) literally false as a factual matter, or (2) although literally true, is likely to deceive or confuse customers. See Lipton v. Nature Co., 71 F.3d 464, 474 (2d Cir. 1995). In addition, a plaintiff must show that the defendant misrepresented "an inherent quality or characteristic" of the product at issue such that the misrepresentation was likely to have had a material effect on purchasing decisions. See NBA v. Motorola, Inc., 105 F.3d 841, 855 (2d Cir. 1997). A plaintiff claiming literal falsity but seeking only injunctive relief, as Wiley is here, need not prove consumer confusion. See McNeil-P.P.C., Inc. v.

13

Bristol-Myers Squibb Co., 938 F.2d 1544, 1548-49 (2d Cir. 1991). Nevertheless, to bring a claim under Section 350, the gravamen of the complaint must be consumer injury or harm to the public interest.[2] See Maurizio v. Goldsmith, 230 F.3d 518, 522 (2d Cir. 2000).

---

[2] With the exception of the element of harm to the public interest, the standards for analysis of a Section 350 claim are the same as those for a Lanham Act claim. See Johnson & Johnson Vision Care, Inc. v. Ciba Vision Corp., 348 F. Supp. 2d 165, 177 n.6 (S.D.N.Y. 2004)

Wiley argues that approximately 19,000 of the Palisade Complete's 607,554 spectra are "duplicates", and that Palisade's representation that the Palisade Complete has more than 600,000 spectra is therefore false. Wiley relies on an internal e-mail from Douglas Stauffer, Palisade's mass spectrometrist, which states that in order to reach the 600,000 mark, Stauffer had added isotope peaks to existing spectra from the NIST database and had thereby generated an additional 19,094 spectra for the Palisade Complete. When questioned at a deposition about this process, Stauffer testified that spectra with added isotope peaks could be viewed as the same spectra, and that "my first thought was this is totally bogus . . . But as I thought about it and realized that it would improve search results, I thought it was OK." Stauffer also stated in an affidavit that the added isotope peaks "make the spectra more accurate and complete" and that he had only retained as additional spectra those that were sufficiently distinct after the isotope peaks had been added. Stauffer explained that because NIST does not permit any changes to be made to its spectra, spectra from the NIST database with added isotope peaks could only have been included as separate spectra in the Palisade Complete. This evidence raises a genuine issue of disputed fact as to the accuracy of Palisade's statement that the Palisade Complete contains more than 600,000 spectra.

Wiley also contends that Palisade's statement that the

Palisade Complete contains all commercially available spectra is false because Stanton Loh, another mass spectrometrist employed by Palisade, testified at his deposition that he did not "know for sure" whether spectra that Wiley sells in some of its smaller databases were included in the Palisade Complete. Defendant McLafferty responded in his affidavit that "[a]s far as Palisade . . . [has] been able to determine over the years, all of [Wiley's] smaller spectral databases . . . contain spectra that are also contained in the Wiley Registry and NIST databases, both of which are part of the Palisade Complete."

Loh's testimony is insufficient to raise a genuine issue of disputed fact as to the accuracy of Palisade's statement. Wiley has not offered any evidence that the smaller databases it sells contain spectra not included in the Palisade Complete, nor has it otherwise identified any commercially available spectra not contained in the Palisade Complete. Loh's state of mind as to the accuracy of Palisade's statement is irrelevant.

Wiley also contends that Palisade misrepresented the size of the 2002 version of the Wiley/NIST database in its marketing for the Palisade Complete in order to overstate the difference between the two products. The marketing materials at issue identify the 'NIST 2002' database as having 175,000 spectra, an undated version of the 'Wiley7/NIST' database as having 390,000 spectra, and the Palisade Complete as having over 600,000 spectra. The 'Wiley7/NIST' database in the comparison was not

the 2002 version of the Wiley/NIST product, which had over 444,000 spectra, but the preceding 1998 version. According to Wiley, the "necessary implication" of the comparison, which is false, is that the same version of the NIST database, i.e. the 2002 version, is used both separately and in the combined Wiley/NIST database.

A representation is conveyed by "necessary implication" when, considering the advertisement at issue in its entirety, "'the audience would recognize the claim as readily as if it had been explicitly stated.'" Johnson & Johnson, 348 F. Supp. 2d at 182 (quoting SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson-Merck Consumer Pharm. Co., No. 01 Civ. 2775 (DAB), 2001 WL 588846, at *8 (S.D.N.Y. June 1, 2001). To be found false by necessary implication -- a variant of literal falsity -- "the challenged advertisement must be 'susceptible to no more than one interpretation.'" Id. (quoting Johnson & Johnson-Merck Consumer Pharm. Co. v. The Procter & Gamble Co., 285 F. Supp. 2d 389, 391 (S.D.N.Y. 2003)).

The implication that the NIST database referred to in the designation 'Wiley7/NIST' is the same 2002 version that the advertisement identifies separately is not a necessary one. The advertisement expressly identifies the standalone NIST database as the 2002 version. By contrast, the advertisement is silent on the version of the NIST database in the combined Wiley/NIST

17

product, and thus may be different from the version of the standalone product.

Finally, Wiley contends that Palisade falsely represented the number of spectra in the combined Wiley7/NIST02 database by distributing in a trade show a draft reseller agreement which understated the number of spectra in that database by 54,000. Palisade does not contest the misstatement, but argues that it was inadvertent and has never been repeated. Wiley, which seeks only injunctive relief on its false advertising claim, has proffered no evidence that Palisade's isolated misstatement is likely to recur. See Organizational Tech., Inc. v. Dun & Bradstreet Corp. Found., 96 Civ. 5178 (MBM), 1997 WL 599412, at *3 (S.D.N.Y. Sept. 26, 1997) (an injunction pursuant to the Lanham Act will not be issued "to curtail behavior that shows no signs of recurring." ).

## CONCLUSION

For the foregoing reasons, Wiley's motion for summary judgment is denied. Palisade's motion for summary judgment on Wiley's false advertising claim is granted in part and denied in part. The balance of Palisade's motion for summary judgment is denied.

SO ORDERED.

Dated:   New York, New York
         October 21, 2005

S/_____
   MIRIAM GOLDMAN CEDARBAUM
   United States District Judge